IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


**MOLIERE DIMANCHE, JR.,**

    **Plaintiff,**

vs.                                                Case No. 4:11cv533-SPM/CAS

**COLONEL JERRY BROWN, et al.,**

    **Defendants.**

_____/


## REPORT AND RECOMMENDATION

Defendants have filed a motion to dismiss, asserting that Plaintiff failed to exhaust administrative remedies. Doc. 74. Plaintiff was directed to respond to the motion to dismiss, doc. 76, and he has timely filed a response. Doc. 77. The issue is whether Plaintiff exhausted administrative remedies as is required by the Prison Litigation Reform Act. 42 U.S.C. § 1997e(a).

**Exhaustion**

When the Prison Litigation Reform Act was enacted, Congress mandated that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a), *quoted in* doc. 74, at 6-7. The exhaustion requirement is

mandatory, whether the claim is brought pursuant to § 1983 or Bivens. Alexander v. Hawk, 159 F.3d 1321, 1324-26 (11th Cir. 1998). The exhaustion requirement of § 1997e(a) is not jurisdictional, however. Bryant v. Rich, 530 F.3d 1368, 1374 n.10 (11th Cir.), *cert. denied*, 129 S.Ct. 733 (2008) (citing Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2392, 165 L.Ed.2d 368 (2006)). There is no discretion to waive this requirement or provide continuances of prisoner litigation in the event that a claim has not been exhausted prior to filing. Alexander, 159 F.3d at 1325; *see also* Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (holding that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."); Brown v. Sikes, 212 F.3d 1205, 1207-08 (11th Cir. 2000) (finding that an inmate must "provide with his grievance all relevant information reasonably available to him" but he cannot be required to name individuals responsible for challenged conduct when he could not yet identify those persons).

The Court may not consider the adequacy or futility of administrative remedies, but only the availability of such. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000), *citing* Alexander, 159 F.3d at 1323. An administrative remedy is not available for purposes of the PLRA, though, if prison officials render pursuit of the remedy irrational through serious threats of substantial retaliation. Turner v. Burnside, 541 F.3d 1077, 1084-85 (11th Cir. 2008). To demonstrate such unavailability under Turner, a prisoner must establish that: (1) the threat actually deterred him from lodging a grievance or pursuing a particular part of the administrative process; and (2) the threat is one that would so deter a reasonable inmate of ordinary firmness and fortitude. *Id.*, at 1085.

Even where an inmate seeks only monetary damages in a civil rights case, he must complete the prison administrative process if it could provide some sort of relief on the complaint although no money could be given administratively. Booth v. Churner, 531 U.S. 956, 121 S. Ct. 1819, 1821, 149 L. Ed. 2d 958 (2001). "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." Jones v. Bock, 549 U.S. 199, 204-209, 127 S.Ct. 910, 914, 166 L.Ed.2d 798 (2007)[1].

Furthermore, prisoners must comply with the process established by the State's grievance procedures. See Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999). In other words, not only must a prisoner exhaust a claim under § 1997e(a), the PLRA "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93, 126 S.Ct. 2378, 2387 (2006) (concluding that "proper exhaustion" means complying with the specific prison grievance requirements, not judicially imposed requirements). Even if a grievance is initially denied as untimely, a prisoner must appeal the denial of the grievance. See Harper v. Jenkin, 179 F.3d 1311 (11th Cir. 1999)(noting Georgia's inmate grievance procedures allow "the grievance coordinator to waive the time period for filing a grievance if 'good cause' is shown"); Bryant v. Rich, 530 F.3d at 1373. If one claim is unexhausted, the Court may separate that claim out and proceed on only those claims that have been exhausted. Brown, 212 F.3d at 1206, n.1; Jones, 549 U.S. at 223, 127

---

[1] The Court further rejected the view of the Sixth Circuit when it concluded that "nothing in the statute [§ 1997e(a)] imposes a 'name all defendants' requirement." Jones v. Bock, 549 U.S. at 217-219, 127 S.Ct. at 922-923 (concluding "that exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances.").

S.Ct. at 925 (rejecting a "total exhaustion rule" and requiring dismissal only of those unexhausted "claims," not an entire "action.").

Defendants "bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." Turner, 541 F.3d at 1082-83, *relying on* Jones v. Bock, 549 U.S. 199, 127 S.Ct. at 910, 921, 166 L.Ed.2d 798 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."); Dixon v. United States, 548 U.S. 1, 8, 126 S.Ct. 2437, 2443, 165 L.Ed.2d 299 (2006) (stating that, as a "general evidentiary rule," the burdens of production and persuasion are given to the same party).

Factual disputes concerning the exhaustion of administrative remedies may be decided by the court sitting as fact-finder, "so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1373-74, 1376.  Even though evidence[2] may be presented to support or refute a contention that a prisoner has not exhausted the grievance process, exhaustion is a "matter in abatement and not generally an adjudication on the merits," thus, it should be raised and treated as a motion to dismiss, not a summary judgment motion.  *Id.*, at 1374-75.  Plaintiff was on notice of his obligation to demonstrate exhaustion in light of the motion to dismiss.

---

[2] When motions to dismiss are based on issues not enumerated under Rule 12(b), then Rule 43(c) governs "which permits courts to hear evidence outside of the record on affidavits submitted by the parties." Bryant, 530 F.3d at 1377, n.16.

**Allegations in the amended complaint, doc. 8.**

The events about which Plaintiff alleges took place in the summer of 2010, with the sixteen named Defendants involved in the conspiracy to unnecessarily use chemical agents on Plaintiff in retaliation for his use of the grievances process.  Doc. 8.  Plaintiff alleged in the complaint that he "was terrified of the staff members at Liberty C.I." and so did not take action or even inform his family of the alleged abuse until after Plaintiff's transfer to another institution in January of 2011.  *Id.,* at 12.  Plaintiff alleged that after he was transferred, he "wrote a grievance of reprisal, put it in a sealed envelope and filed the grievance of reprisal with the Office of the Secretary . . . and explained how he was abused and retaliated against for his good faith use of the grievance process."  *Id.*  Plaintiff alleged that the grievance was returned to him by Defendant Solano, directing him to report the abuse to the inspector within 15 days.  *Id.*  Plaintiff alleged that he did not receive the response until after the 15 days had expired, and then was returned to Liberty Correctional Institution, placed in confinement (without receiving a disciplinary report), and visited at his cell door by Defendant Brown who threatened Plaintiff if he "pursued the abuse any further."  *Id.,* at 13-14.  Plaintiff alleged a "similar threat was made . . . by Inspector R. Smith" who "promised to prolong the investigation so that the Plaintiff would spend at least 'six months in confinement under investigation' to reconsider pursuing the issue."  *Id.,* at 14.  Plaintiff alleged further threats by other Defendants for being "a writ writer."  *Id.*  Plaintiff alleged that "the grievance process is not an option to the Plaintiff" due to hostility by staff.  *Id.,* at 15.

**Evidence**

Plaintiff is housed within the Florida Department of Corrections which has an administrative grievance program, FLA. ADMIN. CODE R. 33-103.  Exhaustion is generally a three step process requiring the filing of an informal grievance within a reasonable time, followed by a formal grievance which is file din the Warden's office, and then a grievance appeal to the Secretary's Office.  Doc. 74, at 2-3; FLA. ADMIN. CODE R. 33.103.005 to 33.103.007.  If an inmate is not satisfied with the response to the if, he has 15 calendar days in which to file the formal grievance and, similarly, 15 calendar days in which to file the appeal.  Doc. 74, at 3.  The Rules also permit the filing of direct grievances to the Secretary's Office in several limited situations: emergency grievances, grievances of reprisals, or grievances of a sensitive nature.  FLA. ADMIN. CODE R. 33.103.007(6).

Defendants have shown that between July 1, 2010, until November 10, 2011, when the amended complaint was filed in this Court, Plaintiff filed 12 formal grievances, all of which "were either returned without action or denied . . . ."  Doc. 74, at 4; Ex. A.[3] Plaintiff filed only one grievance appeal, dated April 15, 2011, appeal # 11-6-12035.  *Id.* That appeal was returned to Plaintiff without action, because Plaintiff failed to submit copies of grievances filed at the institutional level or else he failed to provide a valid reason for his failure to follow the rules.  Doc. 7 4, at 4; Ex. B.

After Plaintiff had already initiated this case (October 18, 2011), Plaintiff filed some grievance appeals beginning on December 19, 2011, related to some Defendants

---

[3] The exhibits referenced are to those filed with the motion to dismiss, doc. 74. Plaintiff did not file any exhibits with his response, doc. 77.

in this case. Doc. 74, at 4. All three appeals were returned without action, and one appeal concerned an incident which occurred after Plaintiff filed his complaint in this case. *Id.*

In response, Plaintiff acknowledges that the Rules require him to state at the beginning of Part A of Form DC1-03 that it is an emergency grievance, grievance of reprisal, or grievance of a sensitive nature. Doc. 77, at 1. Plaintiff acknowledges that the Rules require him to state the reason the complaint was not first brought to the attention of institutional staff. *Id.*, at 1-2. Plaintiff contends that in grievance #11-6-12035 he did state that he "filed the grievance directly with Central Office because he was afraid of more retaliation from the Liberty Correctional Institution administration." *Id.*, at 2. Plaintiff claims that his grievance was filed as "a grievance of reprisal" because of earlier grievances he had filed at Liberty C.I. *Id.* Plaintiff also claims the issue was of "a 'sensitive nature' and could not be resolved by the institution . . . ." *Id.* Plaintiff argues that his grievance complied with the Rules. *Id.*, at 2-3. He also argues that Defendant Solano mishandled the grievance which resulted in Plaintiff not receiving it until "well after the time period that she set forth to raise the issue" at the institution. *Id.*, at 3.

**Analysis**

The 12 formal grievances are not sufficient for exhaustion purposes because Plaintiff would have been required to file an appeal of the denied formal grievances to exhaust the claims raised therein. For the grievances which were returned without action, Plaintiff would have to first file an informal grievance or request leave to file a grievance out of time. None of those grievances demonstrate exhaustion.

Moreover, the fact that Plaintiff filed 12 grievances indicates that Plaintiff was not so threatened as he initially claimed. Courts have permitted a claim to proceed finding that the prisoner could not exhaust administrative remedies because they were "unavailable." Yet as noted above, <u>Turner</u> requires a prisoner to show that threats actually deterred him from pursuing a grievance. Plaintiff cannot show unavailability because he was not deterred and filed 12 grievances.

The only real issue here is whether the one grievance appeal filed, #11-6-12035, was sufficient for exhaustion purposes. That grievance was returned to Plaintiff without action. Ex. B. Defendants argue that Plaintiff failed to follow procedures for filing a "direct grievance," that he failed to provide "a valid reason for his failure to follow the rules," and contend Plaintiff should not have bypassed the institutional level grievance. *Id.* Defendants assert that Plaintiff's claims in grievance appeal #11-6-12035 "did not qualify" as a "direct grievance" and Plaintiff did not state at the beginning of the grievance that it was either an emergency, a grievance of reprisal, or grievance of a sensitive nature. *Id.*

Under FLA. ADMIN. CODE R. 33-103.007(6)(a)1, an inmate "shall state at the beginning of Part A of Form DC1-03 that the grievance concerns either an emergency, or is a grievance of reprisal, or a grievance of a sensitive nature." Under FLA. ADMIN. CODE R. 33-103.007(6)(a)2, the inmate "must clearly state the reason for not initially bringing the complaint to the attention of institutional staff and by-passing the informal and formal grievance septs . . . ." The Rules also provide that if a direct grievance is received and deemed *not* to be a permissible direct grievance, it shall be "returned to

the inmate with the reasons for return specified advising the inmate to resubmit his or her grievance at the appropriate level."  FLA. ADMIN. CODE R. 33-103.007(6)(d).

Neither Plaintiff nor Defendants submitted the actual "direct grievance" with the motion to dismiss or the response; however, review of this case reveals that Plaintiff submitted the direct grievance with the initial complaint, doc. 1.  Review of that document confirms Defendants arguments that Plaintiff did not identify it as a direct grievance.  Doc. 1, at 15.  Plaintiff did not have copies of earlier grievances attached and did not alert prison officials on the DC1-03 Form that it was submitted as a direct grievance rather than as a grievance appeal.  There were no statements within the document which made that assertion either.  *Id.*  Therefore, it was appropriate for the grievance to have been returned to Plaintiff without action.  Plaintiff cannot expect prison officials to *assume* that it was a direct grievance simply because Plaintiff did not provide copies of earlier grievances.  Contrary to Plaintiff's argument, he did not indicate anywhere on the form that it was a direct grievance.

Moreover, while Plaintiff advised within the body of the grievance that he was in fear for his life, he did not present any reasons for not initially bringing the complaint to the attention of institutional staff.  Plaintiff did not address that point at all.  Furthermore, Plaintiff did not specifically identify the grievance as one of either a reprisal, or an emergency, or of a sensitive nature.  Again, Plaintiff cannot expect prison officials to read his mind.  Plaintiff did not comply with Rule 33-103.007 and, thus, did not exhaust administrative remedies.

As for Plaintiff's argument that Defendant Solano mishandled the grievance which resulted in Plaintiff not receiving it until after the time period provided for

resubmitting it, Plaintiff has not clearly stated when he received it.[4] More importantly, Plaintiff does not explain why he could not have requested additional time in which to pursue administrative remedies if he had in fact received it beyond the time period.

In response to the motion to dismiss, Plaintiff has not shown that administrative remedies were unavailable to him. Plaintiff did not comply with the grievance process and, therefore, under Woodford, *supra*, Plaintiff did not properly exhaust administrative remedies. The motion to dismiss must be granted.

In light of the foregoing, it is respectfully **RECOMMENDED** that the motion to dismiss, doc. 74, be **GRANTED,** and Plaintiff's amended complaint, doc. 8, be **DISMISSED** for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997(e) and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2), and that the order adopting this report and recommendation direct the Clerk of Court to note on the docket that this cause was dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**IN CHAMBERS** at Tallahassee, Florida, on May 21, 2012.

   S/    Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

---

[4] Solano's response advised Plaintiff that if he feared staff, as he had alleged on the DC1-03 Form, that he should "contact the institutional inspector." *Id.*, at 14. The response is dated April 25, 2011, by Defendant Solano, and a stamp at the top of Part B - Response states it was "mailed/filed with agency clerk" on April 28, 2011. *Id.*

Case No. 4:11cv533-SPM/CAS

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**